IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANNA CUMMINS, for herself and    :
on behalf of those similarly
situated                         :

    v.                            :    Civil Action No. DKC 19-2953

                                       :

ASCELLON CORPORATION

                                       :

**MEMORANDUM OPINION**

Presently pending in this wage dispute under the Fair Labor Standards Act ("FLSA") are (1) Plaintiff Anna Cummins' corrected motion for notice and conditional certification (ECF No. 25), and (2) Plaintiff's motion for equitable tolling for the purported members of that collective. (ECF No. 28). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, both motions will be granted.

**I.  Background**

Ms. Cummins is a resident of Franklin County, Kentucky. On or around October 18, 2010, she was hired by Ascellon Corporation. Ascellon has conducted business throughout the United States since at least 2003 with its principal place of business in Prince George's County, Maryland. It has a series of contracts with various federal and state entities to carry out, among other things, "on-site survey services." These contracts require

Ascellon to inspect and survey healthcare facilitates to ensure compliance with minimum standards.  The duties of certain people, including Ms. Cummins, called "Surveyors," were to travel to "Long Term Care Facilities . . . to survey or inspect those healthcare facilities, to verify compliance in accordance with set minimum standards" and "to answer facility questions about best practices."[1]  In this role, Ms. Cummins traveled to all fifty states.

At all times from her start in 2010 to the end of her employment in 2019, Ascellon paid her an hourly, daily or weekly wage that varied.  Between work and travel, she would sometimes work in excess of forty hours each week, while labeled either a full-time or part-time employee, depending on which "portion" of her work she was currently assigned.[2]  On a given inspection, Ms. Cummins was placed in teams with "Surveyors."  She contends that these individuals all worked in excess of forty hours during "one or more workweeks" and, like her, were only paid at their regular wage for hours over forty.

---

[1] Plaintiff initially used the term "consultant/inspector" as a synonym for "surveyor."  Based on Defendant's position that the official title was "Surveyor," Plaintiff agreed to use the term "Surveyor."

[2] The declaration of Ascellon's President Ade Adebisi more fully explains the treatment of "Surveyors" as either full-time or part-time employees.  (ECF No. 26-1, ¶ 15).

Ms. Cummins brought this complaint on behalf of herself and those similarly situated against Ascellon under 29 U.S.C. § 216(b) to recover unpaid back wages owed. (EC F No. 1, ¶¶ 17-19). On February 10, 2020, she was granted leave to file an amended complaint. (ECF No. 17). Ascellon answered on February 24, 2020. (ECF No. 18). Three days later, a notice of a consent to join on behalf of Teresa Cavallaro was filed. Ms. Cavallaro was employed by Defendant as a "Surveyor" and similarly alleges that she is due additional wages for overtime hours worked. (ECF No. 20). Plaintiff then moved on March 3, 2020 for notice and conditional certification of a collective under § 216(b) of the FLSA. (ECF No. 21). Although Defendant responded to this motion on March 31, 2020, (ECF No. 22), Plaintiff's original motion was superseded by a corrected motion for notice and conditional certification on April 3, 2020. (ECF No. 25). Defendant filed its response to this motion on April 6, 2020. (ECF No. 26). Plaintiff replied on April 13, 2020. (ECF No. 27). Nearly three months later, on July 10, 2020, Plaintiff filed a motion for equitable tolling of the purported plaintiffs' claims. (ECF No. 28). Defendant filed an opposition on July 22, 2020, (ECF No. 29), and, on August 5, 2020, Ms. Cummins replied. (ECF No. 30).

## II.  Conditional Certification

Plaintiff moves conditionally to certify the following class: "Any persons who, from [three years prior to the date of the

Court's Order granting this Motion] to the present worked as a 'Surveyor' for Ascellon and were not paid overtime compensation for hours over forty in one or more workweeks." (ECF No. 25, at 2-3). Defendant opposes conditional certification for a variety of reasons, and also objects to the proposed notice and class definition.

**A.    Standard of Review**

"Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C § 216(b)." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 771 (D.Md. 2008). As this court has previously said, "[w]hen deciding whether to certify a collective action pursuant to the FLSA, courts [in this district] generally follow a two-stage process." *See Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 566 (D.Md. 2012) (citing *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682, 686 (D.Md. 2010)). The first stage is commonly referred to as the "notice stage" wherein the court must make a "threshold determination of 'whether the plaintiffs have demonstrated that potential class members are *similarly situated*' such that court-facilitated notice to putative class members would be appropriate." *Id.* (quoting *Camper v. Home Quality Mgmt.*, 200 F.R.D. 516, 519 (D.Md. 2000)) (emphasis added). The second stage, on the other hand, takes place after the close of discovery and makes a "more stringent inquiry" as to whether the plaintiffs are,

in fact, "similarly situated." *Id.* (citing *Rawl v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D.Md. 2007); 29 U.S.C. §216(b)). This later stage is known as the "decertification stage" and involves a final decision as to "the propriety of proceeding as a collective action." *Id.* (citing *Syrja,* 756 F.Supp.2d at 686).

**B.   The Sufficiency of the Declarations**

Defendant takes issue with the declarations submitted by Plaintiff and Ms. Cavallaro. Plaintiff identifies a collective based on a "common policy and practice" of Ascellon to pay all "Surveyors" who worked for it only "his or her salary, day rate, or hourly rate, with no overtime premium, even for hours over forty." (ECF No. 25-1, at 3) (citing ECF Nos. 25-2, ¶¶ 8-10 and 25-3, ¶¶ 8-10). These declarations point to "over thirty individuals in the defined class, all of whom were subjected to these unlawful compensation practices." (*Id.*, at 10). Like Ms. Cummins, this purported collective is alleged to be "uniformly owed full and proper payment of overtime wages if Defendant's non-payment of same is not found to be justified by any exemption in the law." (ECF No. 25, at 2).

Ascellon attacks both declarations for "rely[ing] on conclusory allegations and hearsay from unidentified sources in an effort to establish that all putative collective members performed the same or similar job duties, routinely worked in excess of 40

hours per workweek, and were subjected to the same undefined Ascellon policy allegedly to violate the FLSA." (ECF No. 26, 18-19).   The allegations, it argues, take the form of "copy-and-paste submissions" and "boilerplate" language that Declarants have personal knowledge that their treatment as "Inspector/Consultants" or "Surveyors" was "virtually the same as other members in the putative class." (*Id.*, at 19) (citing ECF Nos. 25-2, ¶¶ 4-5 and 25-3, ¶¶ 4-5).  Defendant complains that this allegation is based entirely on the bald assertions that all Surveyors were subject to a "policy [] not to pay overtime," and that others have not joined simply because they have not received notice. (*Id.*) (citing ECF Nos. 25-2, ¶¶ 6-10, 16 and 25-3 ¶¶ 6-10, 13).   According to Defendant, these allegations lack sufficient "factual basis" to warrant certification.   (*Id.* at 19-20) (citing *Forkwa v. Symbral Found. For Comm. Servs., LLC.*, No. PWG-11-3513, 2013 WL 4760985 (D.Md. Sept. 3, 2013)).  The declarations also rely on hearsay, it claims, insofar as they point to "out-of-court conversations with unidentified sources to prove the truth of the matter asserted." With no *admissible evidence* to suggest there are members of the purported collective "who were not paid overtime rates for hours worked in excess of 40 in a given workweek," Ascellon argues that certification should be denied. (*Id.*, at 21-22).

Contrary to Ascellon's contention, the declarations can be considered.  Everything reported in both declarations is based on

the two Surveyors' "personal observations and work experience."
(ECF No. 27, at 12). The fact that these two women refer to out-
of-court statements by other Surveyors is irrelevant at this stage;
as Ms. Cummins points out, evidence that would otherwise be
considered inadmissible as hearsay at trial may be considered at
the notice stage where the declarations are based on personal
knowledge of those statements. (ECF No. 27, at 12-13) (citing,
inter alia, Calder v. GGC-Balt., LLC, No. BPG-12-2350, 2013 WL
3441178 at *2 n.1 (D.Md. July 8, 2013) ("hearsay that may be
inadmissible at trial may be considered at the notice stage where
the affiant has knowledge of the statement")). To rule otherwise
would defeat the very purpose of granting notice during the
conditional certification stage: to give members of the purported
collective a chance to come forward with their own evidence of
defendant's allegedly illegal conduct.

This evidence is far different from that which was held to be
insufficient for conditional certification in Forkwa, 2012 WL
6727134 at *1. In that case, the plaintiffs similarly declared
that the Defendant "did not pay other employees at an hourly rate
at least equal to the federal minimum wage." The court found that
"Plaintiffs do not state the factual basis for the essential legal
conclusion that [the defendant] failed to pay its employees a
minimum wage and overtime." In fact, the only evidence the

plaintiffs in *Forkwa* used to show the purported plaintiffs were similarly situated was their identical titles. *Id.*

Here, both declarants *do* have a basis for their claim that the approximately thirty Surveyors who work for Ascellon were all not paid the overtime rate owed to them: they allege they have spoken to these fellow employees on the matter. (*See* ECF Nos. 23-2, ¶¶ 7-8, 23-3, ¶¶ 7-8). Moreover, Ms. Cummins highlights that she has "attached pay and time records showing the uniformity of the timekeeping submitted and the method of payment." (ECF No. 27, at 14) (citing ECF Nos. 25-2, 25-3). Both declarants submit payroll records that show they reported overtime hours to Ascellon but were not paid a premium for them.

### C. A Common Policy Towards "Surveyors"

Ascellon argues that Plaintiff has not pled sufficiently a common scheme, policy or plan. In addition to the pleadings of the amended complaint, Ms. Cummins, as named Plaintiff, and Ms. Cavallaro, "have filed Consents to Join and Declarations in support of this Motion to date, without the benefit of court-facilitated notice. Each alleges common job functions [as 'Surveyors' employed by Ascellon], common pay practices and policies, and failure to pay overtime due to same." (ECF No. 25-1, at 3).

At the notice stage, "[e]mployees cannot reasonably be expected [] to have evidence of a stated policy of refusing to pay overtime." *Blake v. Broadway Services, Inc.*, No. CCB-18-086, 2018

WL 9597121 at *1 (D.Md. Sept. 13, 2018) (citing *Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 772 (D.Md. 2008)); *see also Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 567 (D.Md. 2012) (finding that plaintiffs at the notice stage "need not include evidence that the company has a *formal policy* of refusing to pay overtime") (emphasis added).

Plaintiff argues, nevertheless, that she does have such evidence by way of Defendant's own answer to her amended complaint. Defendant admitted therein that the inspections performed by Ms. Cummins were also performed "in teams of individuals, all Ascellon employees, each of whom was also classified as a 'Surveyor.'" (ECF No. 18, ¶ 24). Ascellon further concedes that none of the "Surveyors," Ms. Cummins included, were paid overtime for hours worked in excess of forty hours a week but contends that they were not required to under the FLSA. (*Id.*, ¶¶ 22, 28, 35). The declaration of Ms. Cavallaro, as a "Surveyor," tends to corroborate this assertion. She states that she and others in this role "routinely worked overtime hours" but that she and "none of the other 'Surveyors'" were paid as such. (ECF No. 23-3, ¶¶ 6-10). She alleges having "worked with each and every" individual holding the roles "except for ones who started close in time to the end of my employment" and reports that *none* received the overtime she

claims was owed to them despite all working over forty hours a week at some point.  (ECF No. 25-2, ¶¶ 5-10).[4]

Defendant argues that this evidence is nonetheless "manifestly deficient" for certification, as Plaintiff has failed to plead facts sufficient actually to show that "members of the putative collective were subject to a common scheme, policy, or plan" to violate the FLSA.  (ECF No. 26, at 16).  Ascellon argues that Ms. Cummins has fundamentally misrepresented its answer in attempting to fashion an affirmative policy out of one of Ascellon's denials.  First, it asserts that nowhere has it admitted that "all potential collective members regularly worked in excess of 40 hours per workweek or that it failed to properly pay any employee overtime wages."  Instead, its answer was meant to relate "*solely* to Plaintiff's employment in that, on occasion, Plaintiff worked in excess of 40 hours in a given workweek."  Even this, they argue, admits nothing affirmatively as "Ascellon [only] *denies* that it owed Plaintiff any overtime wages under the FLSA for those hours worked in excess of 40."  (ECF No. 26, at 18) (emphasis added).

---

[4] Similarly, Ms. Cavallaro reports that she worked "with the majority of those "Surveyors" who worked for Ascellon during the time period she worked there.  She asserts that she knows that none of the other Surveyors had been paid extra for overtime work because she had discussed the matter with them and because they had complained about it.  (ECF No. 23-3, ¶¶ 7-8).

The assertion that Ms. Cummins misrepresented Ascellon's position is belied by two clear statements that Ascellon made in its answer and opposition respectively. These statements, Plaintiff correctly argues, speak to Ascellon's treatment of all Surveyors, and not just Plaintiff as Defendant would have it. (ECF No. 27, at 2 n.2). The answer states "Surveyors were not paid overtime for hours worked in excess of forty per week, if any." It is subject only to a single qualification: that Defendant believes such overtime was not required of them by law. (*Id.*) (quoting ECF No. 18, ¶ 28). Such a qualification, Ms. Cummins implies, does not bar this evidence from showing a common policy as to all Surveyors. Moreover, she argues, uniform treatment of these employees is corroborated by Defendant's own opposition which states "at all times relevant to their employment, Surveyors were exempt from the overtime requirements of the FLSA." (*Id.*) (quoting ECF No. 26, at 27-28).

Even viewed in isolation, Defendant's answer to paragraph twenty-eight of Plaintiff's amended complaint alone might be enough to establish a common policy of not paying "overtime" for hours "Surveyors . . . worked in excess of 40 hours per week." (ECF No. 18, ¶ 28). Combined with the two declarations and the pleadings of the amended complaint, however, Ms. Cummins has sufficiently demonstrated that all Surveyors were treated identically as it relates to their FLSA claim: Ascellon denies

Surveyors were owed for hours worked over forty hours in a given week, if any, and the declarations are sufficient to show that there were Surveyors who did in fact work such overtime hours but were not paid a premium for it.  This is enough to establish a common policy as to how Ascellon compensated all Surveyors.

### D.   Similarly Situated

The FLSA limits conditional certification to "'other employees similarly situated' for specified violations of the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, at 69 (2013) (citing 29 U.S.C. § 216(b) and *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989)).  In this "notice stage," plaintiffs must make "only a relatively modest factual showing." *Pooner v. Mariner Finance, LLC*, No. ELH-18-1736, 2019 WL 2549430 at *4 (quoting *Butler*, 876 F.Supp.2d at 566).  Mere allegations are not enough, however, and some factual showings must be made. *Id.* (citing *Camper*, 200 F.R.D. at 520).  At the notice stage, the plaintiff need not *prove* an actual violation of the FLSA at all, "but rather that a factual nexus exists between the plaintiff's situation and the situation of other potential plaintiffs." (ECF No. 27, at 11 n.6) (citing *Shaver v. Gills Eldersburg, Inc.*, No. CV ELH-14-3977, 2015 WL 5897463 at *7 (D.Md. October 6, 2015)).

Defendant argues that conditional certification is inappropriate because the purported collective has "substantial individualized determinations" that are necessary to adjudicating

12

their claims and thus cannot be "adjudicated efficiently" if certified as a collective. (ECF No. 26, at 22-23) (citing *Syrja* 756 F.Supp.2d at 686). Ascellon argues that its Surveyors "do not all have the same job duties." It points to the declaration of Ade Adebisi, president of Ascellon, who explains, "[s]ome Surveyors inspect and survey the healthcare facilities for compliance with health, medication, and medical records standards. Other Surveyors inspect and survey the facility itself for compliance with fire safety, building code, and emergency preparedness standards." (ECF No. 26-1, ¶ 10). His declaration highlights that such individual determinations are further complicated by the Surveyors' use of their own "personal timekeeping records," which were only provided to Ascellon upon completion.[5] (ECF No.26, at 27).

Other "individualized fact-finding" is required, Ascellon contends, to determine whether each member of the claimed collective is exempt from the overtime requirements of the FSLA and if his or her travel time is compensable under the FSLA. Defendant correctly points to Fourth Circuit caselaw that explains, "Section 13(a)(1) of the FLSA . . . provides an exemption from the overtime pay requirements for person 'employed in a bona

---

[5] Defendant fails fully to explain why not having access to each "employee's personal timekeeping records" prior to their completion stymies collective analysis of their claims.

fide executive, administrative, or professional capacity.'"
*Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993)
(quoting 29 U.S.C. § 213(a)(1)). This itself, Defendant asserts,
turns on a sub-issue: whether Surveyors' travel time is compensable
under the FLSA. (ECF No. 26, at 28) (citing 29 C.F.R. § 785.39)
(discussing when travel away from home is considered work time).
Defendant argues that such fact-intensive and disparate inquiries
"cannot be resolved broadly across the entire putative collective
of Surveyors." (*Id.*, at 28).

Ascellon places heavy emphasis on the *Syrja* case as dictating
the outcome on this issue, (ECF No. 26, at 22-31), but Ms. Cummins
is right that *Syrja* is distinguishable from the facts at hand.
(ECF No. 27, at 11-12). The court in *Syrja* itself said that "some
courts have opted to defer manageability concerns until later
stages of the proceedings." 756 F.Supp.2d at 689 (citing *Vondriska
v. Premier Mortg. Fund., Inc.*, 564 F.Supp.2d 1330, 1333 (M.D.Fla.
2007)). The court, however, decided to exercise its discretion
to deny conditional certification because "[u]ltimately, the
significance of manageability concerns at the notice stage is,
like other aspects of the conditional certification analysis, a
decision for the Court *on the facts before it*." *Id.* (citing
*Purdham v. Fairfax Cty. Pub. Sch.*, 629 F.Supp.2d 544, 547 (E.D.Va.
2009)) (emphasis added). Whether to make such determinations at
the notice stage, in other words, requires a fact-specific inquiry.

For this case, the *Syrja* holding is "inapposite because [it] involved circumstances in which no evidence existed of an informal company policy that violated the FLSA." *Butler*, 876 F.Supp.2d at *570 n.11; (*see also* ECF No. 27, at 11).  The key differentiating feature in *Syrja* is one that Ascellon itself highlights.  The court there noted that "aside from his own assertions and those of members of the putative class, [the plaintiff] offered *no evidence that even begins to suggest that* [the defendant] *currently maintains, or that it ever maintained, a uniform national policy of denying appropriate compensation for employee hours worked over 40 in a given week*." (ECF No. 26, at 25) (citing *Syrja*, 756 F.Supp. 2d at 678-88) (emphasis added).  It also stressed that the claims as to the purported collective there ran "across multiple geographic locations throughout the country, over different time periods, in offices run by different managers," which made any claim as to a uniform policy, in the absence of affirmative evidence, not plausible.  *Syrja*, 756 F.Supp.2d at 688.

Here, alternatively, not only has Defendant admitted a uniform belief that Surveyors are not due an overtime premium, but Ms. Cummins has provided two declarations from Surveyors to corroborate that such a uniform policy has been instituted. (ECF No. 27, at 11).  She correctly asserts, based on all three declarations (including Mr. Adebisi's), that "although Defendant's Surveyors live around the country and were sent to assignments

throughout the United States, there is no allegation or evidence that they worked from or were assigned to different offices, or had different managers that set individual policies and practices regarding timekeeping or pay policies." (ECF No. 27, at 12) (citing ECF Nos. 25-2, 25-3, 26-1).

Regardless, Ms. Cummins reminds the court that the conditional certification standard is generally lenient and contends that she has met the "modest" showing required of her at this "nascent stage" of litigation. (ECF No. 27, at 4) (citing *Johnson v. Helion Techs., Inc.,* No. CV DKC 18-3276, 2019 WL 4447502 at *6 (D.Md. Sept. 17, 2019). All "individual analyses" as to whether the purported Plaintiffs are exempt under the FLSA, she asserts, go to "merit issues reserved for Stage II, after both Parties have the benefit of discovery." (*Id.*) (citing *Foster v. Nova Hardbanding, LLC*, No. CV 15-1047 CG/LAM, 2016 WL 4492829 at *4 (D.N.M. Apr. 20, 2016).[6] Defendant argues that the exemption

---

[6] *Johnson* is particularly persuasive on why such determinations are premature in this case. In *Johnson*, this court rejected the defendant's arguments that the proposed collective did not have similar responsibilities, was compensated differently, and that the plaintiffs' allegations were conclusory. The defendant also raised an almost identical challenge to the collective, arguing that "exemption issues precluded certification because they 'could lead to discrete battles . . . regarding whether each of the positions can lawfully be treated as exempt, but also whether certain individuals who served in a particular position were exempt and others were non-exempt.'" This court, in turn, rejected all these challenges because the defendant was found to "delve[] too deeply into the merits of the dispute; such a steep

issue cannot be deferred because if some, but not others, of the Surveyors may be found to be exempt, certification may be improper as discussed more below.  (ECF No. 26, at 27-28).    In a footnote, Ms. Cummins points out the irony of this position: that Ascellon has made a uniform determination that no Surveyors are owed an overtime premium under the FLSA while arguing that their individual differences defeat their collective nature.  She is correct that "alleging a common scheme of misclassification itself renders certification appropriate."  (*Id*, at 6 & n.5) (collecting cases).

Ms. Cummins makes the minimal showing necessary that a factual nexus exists between herself and members of the purported collective.  Here all Surveyors, according to the declarations, were uniformly not paid an additional overtime rate for hours worked over forty during a given week.  Although Defendant counters that neither Plaintiff nor those similarly situated were entitled to such a premium, this argument goes to the merits of whether these Surveyors were exempt under the FLSA.  Weighing into the merits of the FLSA's requirements in this way is inappropriate at the conditional certification stage.  *See Johnson*, 2019 WL 4447502 at *6.  If it is later determined that some or all Surveyors were exempt from the FLSA, then decertification of the collective can still occur at the second stage of this process.  Plaintiff has

---

plunge is inappropriate for such an early stage of a FLSA collective action." *Johnson*, 2019 WL 4447502 at *6.

made the modest showing required of her in establishing a collective of similarly situated plaintiffs.

### E.   A Fail-Safe Collective

Defendant also argues that the proposed collective should be denied certification because it constitutes an "Impermissible Fail-Safe" class: one that defines collective membership by whether an individual has a valid claim or not. (ECF No. 26, at 31).  Defendant points to various cases that have defined this concept in the context of class certification under Fed.R.Civ.P. 23.  (ECF No. 26, at 31) (citing *EQT Prod. Co. V. Adair*, 764 F.3d 347, 360 n.9 (4th Cir. 2014) ("[A] fail-safe class is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.") (internal quotation marks omitted); *Chado v. Nat'l Auto Inspects., LLC*, No. JKB-17-2945, 2019 WL 1981042 at *4 (D.Md. May 3, 2019) (a fail-safe class is "one that requires a finding of liability before ascertaining whether an individual is a class member.").

Leaning particularly heavily into *Chado*, Defendant writes, "[t]he fact that this case is a purported collective action, not a class action, should not change the analysis." (ECF No. 26, at 33).  Plaintiff argues in reply that the purported collective here is not like the class in *Chado*.  There, the "inclusion of language requiring non-payment of overtime in the definition [of the class] would require inquiry at the outset as to whether or not a class

18

member was paid overtime." (ECF No. 27, at 16).  Here, by contrast, Ascellon has admitted Surveyors were not paid overtime for any hours over forty per week.  (*Id.*) (citing ECF No. 18, ¶ 28).  With this admission, she argues "no further inquiry need be made to determine whether an individual who worked over forty hours . . . is part of the collective or not."  (*Id.*).  In other words, Plaintiff implies this is not a fail-safe collective at all.

The difference between the treatment of a fail-safe class in the class action and the FLSA collective action context is informative.  Defendant concedes that some courts have found it unclear if the doctrine even applies in the collective action context.  (ECF No. 26, at 33) (citing *Roy v. FedEx Ground Package Sys., Inc.*, 353 F.Supp. 43, 71 (D.Mass. 2018)).  Where it has been applied, however, Ascellon argues fail-safe collectives have been allowed for fact-specific reasons as where "class membership [can be] readily and objectively ascertainable on the basis of payroll records regardless of whether such evidence also [spoke] to the strength of individual prospective members' cases."  (ECF No. 26, at 33) (quoting *Feustel v. Careerstaff Unlimited, Inc.*, *No. 1:14-cv-264, 2015 WL 13021897 at *2 (S.D. Ohio March 25, 2015)*).  Here, alternatively, Ascellon contends that membership of the class is unclear from payroll records: "Surveyors recorded travel time differently or inadequately."  (*Id.*) (citing ECF No. 26-1 ¶¶ 34-44).

Ascellon fails fully to analyze *Feustel* or other cases involving fail-safe collectives or classes. Several courts have found that a "fail-safe class definition" is not necessarily fatal in the Fed.R.Civ.P. 23 context. *See, e.g.*, *Hicks v. T.L. Cannon Corp.*, 35 F.Supp.2d 329, 357 (W.D.N.Y. 2014) (quoting *Mazzei v. Money Story*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012)) ("A finding of a fail-safe class does not result in a bar to certification of the class. 'Despite a fail-safe class definition, courts have discretion to construe the complaint or redefine the class to bring it within the scope of Rule 23.'"). In the FLSA collective action context, *Feustel* states:

> [D]efining the class to avoid the fail-safe problem while not being over-inclusive "is more of an art than a science.... and *often should be solved by refining the class definition rather than by flatly denying class certification* on that basis." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *see also Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 357 (W.D.N.Y. 2014) (recognizing that the court has discretion to construe the complaint or define the class to prevent a fail-safe class).

2015 WL 13021897 at *2 (emphasis added). In dealing with a class or collective, therefore, the doctrine generally does not bar certification but counsels for reformation *where necessary*.

Like in *Feustal*, and despite Ascellon's claims to the contrary, (ECF No. 26, at 33), the collective *is* ascertainable from these payroll records as Plaintiff argues. (ECF No. 17 n.6).

The fact that some Surveyors "may have kept personal records prior to submitting their time as required, or that some time submitted may not be compensable" as Defendant's allege, goes to damage calculations of each opt-in plaintiff and not certification. (*Id.*) (citing ECF No. 26, at 33-34).

Other district courts in the Fourth Circuit have conditionally certified similarly defined collectives. In *Meeker v. Med. Trans., LLC.*, No. 2:14-cv-426, 2015 WL 1518919 at *4 (E.D.Va. April 1, 2015), for example, the court conditionally certified a class of "all FLSA non-exempt and/or hourly ambulance crew employees who . . . were improperly denied overtime pay to which they were entitled under the FLSA." The court added in a footnote: "Defendants argued that this is an impermissible fail-safe class. However, this Court has approved a nearly identical class." *Id.* at *4 n.1 (citing *Winingear v. City of Norfolk*, No. 2-12-cv-560, 2014 WL 3500996 at *2 (E.D.Va. Feb. 3, 2014) (conditionally certifying a class consisting of "all FLSA non-exempt and/or hourly law enforcement officers employed by City of Norfolk" between the applicable dates). *Perry v. Krieger Beard Servs., LLC.*, No. 3:17-cv-161, 2018 WL 3218413 at *3 (S.D.Ohio July 2, 2018), instructively explains how a class defined as Ms. Cummins has defined it is not actually fail-safe at all; the court writes:

> Plaintiffs define the class to include all
> technicians who worked for [the
> defendant] and were not paid one-and-a-half
> times their regular rate of pay for all hours
> worked in excess of 40 per workweek and/or the
> minimum wage for each hour worked. The facts
> that define an individual as a class member
> are knowable without any determination of
> liability. A technician who worked over 40
> hours in a week and was not paid overtime or
> the equivalent of a minimum wage is in the
> class, regardless of whether or not the
> technician qualifies as an employee or is
> entitled to such compensation under the FLSA.
> Thus, Plaintiffs have not proposed an
> impermissible fail-safe class.

In the same way, a Surveyor who worked over forty hours in a week and was not paid a premium for those excess hours is in the collective regardless of his or her status under the FLSA. This is not a fail-safe class as defined in the FLSA collective context and need not be barred as such.[7] Its temporal scope, however, remains in dispute.

## F.  Statute of Limitations

The normal statute of limitations under the FLSA is two years, and only extends to three years where the plaintiff proves that a defendant's violation of the FLSA was willful. 29 U.S.C. § 255(a). Plaintiff moves to have notice of the proposed collective cover a three-year period as a "willful" violation of the FLSA. (ECF No.

---

[7]  In accepting the language proposed, the collective definition offered by Ms. Cummins in the alternate "[s]hould this Court amend the definition to align with Judge Bredar's amendment in *Chado*" need not be considered. (ECF No. 27, at 17).

25-1, at 13-14) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  Ascellon contends that Ms. Cummins' allegations of willfulness do not go "beyond mere conclusory allegations, that an employer willfully violated the FLSA" and is merely "lip service to the willfulness requirement" lacking in caselaw support.  (ECF No. 26, at 36-37).

Plaintiff refers to *Butler* and numerous other cases in which conditional certification did not require a fact-intensive or special pleading of willfulness at the notice stage.  (ECF No. 25-1, at 14); (ECF No. 27, at 17) (collecting cases).  In contrast, Defendant points to *Cohen v. Allied Steel Buildings, Inc.*, 554 F.Supp.2d 1331 (S.D.Fla. 2008) as a court that refused to use the three-year statute of limitations where the plaintiff had only made "conclusory allegations of willfulness." (ECF No. 26, at 36). But the court there only refused the three-year period because the singular "conclusory" allegation of willfulness was entirely "absent any facts to substantiate" it except for a footnote announcing the plaintiff's intention to use the three-year period. *Cohen*, 554 F.Supp.2d at 1335.  Moreover, there is ample caselaw from this district and other district courts in the Fourth Circuit directly on issue.

This court has stressed that the standard adequately to plead willfulness at the notice stage is lenient:

There is a dispute on whether the regular two-year statute of limitations under the FLSA, or its three-year period for "willful" violations, is applicable. The case [plaintiff] cites in support of a three-year statute of limitations provides that claims can only be treated as willful where the plaintiff has "adequately pled the existence of willful violation." *Viscomi v. Diner*, No. 13-4720, 2016 WL 1255713 at *6 n.2 (E.D. Penn. 2016). The Supreme Court has defined willful in this context as meaning, "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Various district courts have put forth rationales as to why a lenient standard should be applied here. *See Hamm v. S. Ohio Med. Cent.*, 275 F.Supp.3d 863, 878 (S.D. Ohio 2017) (arguing for a "lenient standard" and to avoid "weighing" evidence in applying the three-year period to the conditional certification stage); *Saleh v. Valbin Corp.*, 297 F.Supp.3d 1025, 1035 (N.D. Ca. 2017) (collecting cases in putting forth the same rationale and offering a second: that a defendant maintains the ability to decertify the class at stage two) . . . . Given the wide bearth afforded claims of willfulness at this stage the three-year statute of limitations will apply as it relates to potential class certification.

*Graham v. Famous Dave's of Am., Inc.*, No. CV DKC 19-0486, 2020 WL 5653231, at *9 (D.Md. Sept. 23, 2020) *Id.* at *10.[8] If Ascellon

---

[8] Plaintiff is also correct that *Butler* is somewhat instructive in applying a three-year statute of limitations without any special findings on willfulness. (ECF No. 25-1, at 14) (citing *Butler*, 878 F.Supp.2d at 574)). This court has done the same in numerous cases at this stage. *See, e.g.*, *Mitchel v. Crosby Corp.*, No. DKC 10-2349, 2012 WL 4005535 (D.Md. Sep. 10, 2012); *see also McFeeley v. Jackson Street Ent. LLC*, No. DKC 12-1019, 2012 WL 5928902 at *5 (D.Md. Nov. 26, 2012). But the statute of limitations went seemingly unraised as an affirmative defense

wishes to contest the lookback period of the collective in the decertification stage, Ms. Cummins rightly argues, it can. (ECF No. 27, at 18-19) (citing *Clark v. Williamson*, 1:16cv1413, 2018 WL 1626305 at *5 n.6 (M.D.N.C. March 30, 2018)).

Ms. Cummins contends that Ascellon's actions were willful in three places: (1) Defendant's failure to pay was "willful, as Defendant knew, or with reasonable diligence should have known, that Plaintiff and other "Surveyors". . . should be paid overtime premiums"; (2) "Defendants actions were willful and/or showed reckless disregard for the provisions of the FLSA, as evidenced by its failure to compensate Plaintiff and those similarly situated at the statutory rate . . . when it knew, or should have known, such was, and is, due"; and (3) "Due to the intentional, willful, and unlawful acts of Defendant, Plaintiff and those similarly situated . . . lost compensation for time worked over forty (40) hours per week, plus liquidated damages." (ECF No. 17, ¶¶ 32, 37-38).

While the third allegation is a bald legal assertion, the other two plead that Ascellon's conduct was willful in that it knew or should have known of the purported plaintiffs' non-exempt status.  This is enough to survive this lenient standard to ensure

---

at this point in these cases, and so they do not speak directly to the issue here.

that otherwise valid claims are not lost to time because of a lack of notice, a matter over which Plaintiff is rightly concerned. (ECF No. 27, at 19).  This matter can be fully litigated when more is known of this collective through discovery.   A three-year statute of limitations period is proper at this stage given Plaintiff's allegations of Defendant's willfulness in underpaying its "Surveyors."

## III. Motion for Equitable Tolling

As noted by Plaintiff, the statute of limitations in FLSA collective action cases "continues to run for absent collective members until such time as they opt-in to the case." (ECF No. 27) (citing *Robinson v. Empire Equity Grp. Inc.*, No. WDQ-09-1603, 2009 WL 4018560 at *2 n.10 (D.Md. Nov. 18, 2019)).   "Given the broad remedial scope of the FLSA, as well as the significant delays brought on by the global COVID-19 pandemic," Plaintiff requests that the doctrine of equitable tolling serve to toll the statute of limitations to the date on which Ms. Cummins first filed her motion for conditional certification.  (ECF No. 28-1, at 1).  In support of the motion, Plaintiff sites to *McCoy v. Transdev Servs., Inc.*, No. CV DKC 19-2137, 2020 WL 2319117 at *5 (D.Md. May 11, 2020), where this court said that equitable tolling is appropriate where "extraordinary circumstances beyond plaintiffs' control made it impossible to file claims on time" and that the "current public health crisis" constituted exactly this kind of circumstance.

Ascellon counters that the FLSA "expressly requires" the statute of limitations to run until a potential claimant opts-in. (ECF No. 29, at 4) (citing *MacGregor v. Famers Ins. Exch.*, No. 2:10-CV-03088, 2011 WL 2731227 at *1 (D.S.C. July 12, 2011) (stressing that "Congress knew when it enacted 29 U.S.C. § 256 that time would lapse between the filing of the collective action complaint by the named plaintiff and the filing of written consents by the opt-in plaintiffs")).  Ascellon also contends that Ms. Cummins did not exercise "due diligence" in various self-inflicted delays; no instance of others' misconduct or sufficiently extraordinary circumstances are present to justify equitable tolling, even taking COVID-19 into account.  (ECF No. 29, at 5-10).  Seemingly referring to the entire district of Maryland (and not just this court), Ascellon writes, "this Court has repeatedly and expressly declined to toll any applicable statutes of limitations as a result of the COVID-19 pandemic." (ECF No. 29, at 10).  That reference is, however, to Standing Orders and not to individualized decisions on request.  Not all statutes of limitation are eligible for equitable tolling and it would have been improper to include such a notion in a blanket standing order. Moreover, the Standing Order language was designed to alert litigants to the fact that the orders themselves did not toll any statute of limitations.

*McCoy*, as Ascellon correctly contends, involved a request for tolling that went unobjected-to by the other party.  2020 WL 2319117 at *5.   The more recent case, *Graham*, however, involved a hotly contested statute of limitations period; this court noted that the plaintiff, seeking conditional certification of a collective under the FLSA and whose motion had been delayed because of, among other things, COVID-19, "has not filed a motion for equitable tolling, but one might have merit."  2020 WL 5653231 at *9 (allowing the statute of limitations to run from the date the certification motion was filed in that "[i]t makes sense to consider the date the motion for conditional certification was filed as the trigger for the backward look, rather than the filing of the complaint.").  *Graham* also quoted from *Baxter v. Burns & McDonnell Eng'g. Co., Inc.*, No. JKB-10-3241, 2020 WL 4286828 at *3 (D.Md. July 27, 2020), that itself collected numerous cases in which equitable tolling has been applied to FLSA collective action claims because of COVID-19 and other delays in litigation.  *Id.*

Ascellon may be right that the delays here have not gone on as long as they have in other cases in which equitable tolling has applied and may be shorter than some other cases in which equitable tolling was denied.  (ECF No. 29, at 11) (collecting cases).  But there is no strict temporal cutoff for granting this discretionary and equitable relief.  Moreover, it is hard to imagine a more "extraordinary" event than COVID-19, and the motion for

conditional certification has now been pending more than seven months from its filing.[9]   Equitable tolling is proper here and Plaintiff rightfully requests it be applied from the date she filed her motion for collective certification, citing the fact that the filing occurred after much of the "pre-litigation" delays referred to by Ascellon and attributed to Ms. Cummins' lack of diligence. (ECF No. 30, at 3-4).  The filing took place on March 3, 2020, a time when the COVID crisis was both new and reaching a fever pitch. The motion for equitable tolling will be granted.

## IV.  Contents of the Notice

A "district court has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler*, 876 F.Supp.2d at 574 (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006) and citing *Hoffmann-La Roche* 493 U.S. at 171).  "The overarching policies of the FLSA collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'"  *Id.* at 574-75 (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 323 (S.D.N.Y. 2007)).

---

[9] This renders the numerous cases citing a six-month delay as insufficient for equitable tolling inapposite to whether the delays here are enough to merit tolling.  (*Id.*).

Plaintiff proposed a notice form to which Ascellon has a few objections. Ascellon's objections to the alleged "fail-safe" definition and to the use of a three-year "Lookback Period" have been rejected.[10] There are five other objections to the proposed language.[11] First, it objects to the word "proper" in defining the collective as those who "were not paid proper overtime compensation" for overtime hours worked; the word, they argue, is "suggestive of liability." Plaintiff agrees to delete "proper."

Second, Ascellon argues that the "proposed notice does not fully and accurately state Defendant's position in the litigation." Plaintiff's proposal contains the following: "Ascellon denies the allegations above and maintains that its policies and practices comply with the FLSA, in that it was not required to pay overtime compensation to . . . Surveyors." As Plaintiff notes, this is "[n]early identical" language to what the court approved in *Butler* and other cases in this district. (ECF No. 27, at 20) (citing Notice of Collective Action Lawsuit at 2, *Butler*, 876 F.Supp.2d 560 (No. 65-1, at 2) (approving "Defendants

---

[10] With equitable tolling, moreover, the first and fourth paragraphs of the notice will read "[*three years prior to the date on which the Plaintiff filed for conditional certification*]" instead of tolling from the Court's Order.

[11] Plaintiff has also agreed to delete all reference to "Inspector/Consultant" from her collective definition which appears in paragraphs one, two and four. The singular "Surveyor" needs to be corrected to "Surveyors" in paragraph four.

have responded to the lawsuit, denying the Named Plaintiffs' allegations that they violated the FLSA and contenting that they have properly compensated technicians for all compensable working time.")); (See also ECF No. 27, at 20-21) (collecting cases)).

Defendant suggests a more cumbersome and wordier denial in its second paragraph that conveys the same central information to a would-be plaintiff: Ascellon denies the allegations and argues it paid all its employees, including Surveyors, in compliance with the FLSA. (*See* 26-4, at 2). Plaintiff's proposed language is satisfactory. This objection is rejected.

Third, Ascellon contends that the notice does "not fully and accurately notify" recipients of the exact "scope of their potential responsibilities during [] discovery." Plaintiff's proposed notice states, "While the suit is pending, you may be required to provide information in discovery, sit for depositions, and/or testify in court at a trial." (ECF No. 25-4, at 3). Defendant proposes a more detailed statement on discovery obligations in a table entitled "Your Legal Rights and Options" that reads, "While the lawsuit is pending, you may be required to provide information in discovery, which may include answering written questions, producing documents in response to requests, testifying at an oral or video deposition, and/or testifying in court at a hearing or trial." (ECF No. 26-4, at 3).

Other district courts have cautioned that only where the parties seek "neutral and non-technical reference to discovery obligations" do the advantages of providing notice outweigh the potential to deter plaintiffs from opting-in. *Racey v. Jay-Jay Cabaret, Inc.*, 15 Civ. 8228 (KPF), 2016 WL 3020933 at *9 (S.D.N.Y. May 23, 2016) (quoting *Lujan v. Cabana Mgmt., Inc.*, NO. 10 Civ. 755 (ILG), 2011 WL 317984 at *11 (E.D.N.Y. Feb. 1, 2011)).

Defendants in *Butler* similarly objected to a proposed notice for failing to alert prospective plaintiffs to the "possibility of having to participate in the discovery process and the trial," but there the proposed notice had no language around discovery obligations at all, and Plaintiffs did not object to this addition. *Butler*, 876 F.Supp. 2d at 575. (approving a notice stating, "After joining the suit, you may be required to respond to written questions, and otherwise provide information, including the giving of testimony at a deposition and/or in court."). B*ut see Byard v. Verizon W.Va., Inc.*, 287 F.R.D. 365, 374 (N.D.W.Va. 2012) (citing *Fisher v. Mich. Bell Tel. Co.*, 665 F.Supp.2d 819, 829 (E.D.Mich. 2009) and *Russell v. Ill. Bell. Tel. Co.*, 575 F.Supp.2d 930 (N.D.Ill. 2008) ("The defendants have proposed a verbose description of these discovery and trial obligations for inclusion in the proposed notice. The Court, however, finds it reasonable for the plaintiffs to add the simpler language adopted by at least two other district courts: 'While the suit is proceeding, you may

32

be required to provide information, sit for depositions, and testify in court.'").

Defendant's full explanation of discovery obligations seems the kind of verbose language that risks deterring would-be plaintiffs by intimidating them with a cumbersome array of potential tasks.  While Plaintiff is right that the proposed language is similar to that in *Butler*, (ECF No. 27, at 21), the language there was somewhat more detailed than the language put forth by Ms. Cummins.  Plaintiff's language will be approved except that a reference to answering interrogatories is acceptable, as it was in *Butler*, and will be added in having the "Effect of Joining Suit" table entry read: "While the suit is pending, you may be required to provide information in discovery, answer written questions, sit for depositions, and/or testify in court at a trial."  (ECF No. 25-4, at 3).

Fourth, Ascellon argues that the notice should contain "Defendant's counsel's contact information" to ensure that any prospective opt-in plaintiffs can hear "both sides of the 'story' of this litigation."  Ms. Cummins agrees to include defense counsel's name, but not contact information, along with a disclaimer that defense counsel has no legal obligations to prospective plaintiffs.  Judge Messitte has written:

> With respect to including contact information
> about defense counsel, courts have taken a
> variety of positions both within the District

33

of Maryland and around the country.
*See Arevalo v. D.J.'s Underground, Inc., No.
CIV.A. DKC 09-3199, 2010 WL 2639888, at \*3
(D.Md. June 29, 2010) (citing cases).* Though
there is no uniform practice, courts in the
District of Maryland have generally
"identified defense counsel, but not with full
contact information and, occasionally,
including cautionary language to putative
plaintiffs." Id. (*See also Cedillos-Guevara
v. Mayflower Textile Servs., Co.*, No. CIV.A.
GLR-14-196, 2014 WL 7146968, at \*4 (D.Md. Dec.
12, 2014)).

*Boyd v. SFS Commc'ns, LLC*, No. PJM 15-3068, 2017 WL 386539 (D.Md.
January 27, 2017). *Boyd*, like *Arevalo*, approved a notice that
included defense counsel's name and address but not phone number.
Both courts included disclaimers as well. *See Arevalo*, 2010 WL
263988 at \*4 (approving inclusion of a warning that "defense
counsel is obligated to represent the best interests of Defendants
and have no legal obligation to you or your interests"); *Boyd*,
2017 WL 386539 at \*4 (same).

Following this line of cases, the notice will include defense
counsel's name and address but will not include other contact
information and will be immediately followed by the same warning:
"Defense counsel is obligated to represent the best interests of
Defendant and have no legal obligation to you or your interests."

Lastly, Defendant argues that opt-in Plaintiffs need to know
the fee agreement reached between Ms. Cummins and her attorney.
Its proposed language includes a section that sets aside a place
for Plaintiff to "[INSERT DESCRIPTION OF FEE ARRANGEMENT]" for

those that accept Plaintiff's counsel as their own, along with the disclaimer that, "If you elect to be represented by an attorney of your choosing, the fee arrangement that will apply to the representation must be negotiated directly between you and your chosen attorney." (ECF No. 26-4, at 4). Plaintiff argues that the "Effect of Joining Suit" table entry already explains that, "You will not be required to pay attorney's fees directly." (ECF No. 27, at 20) (citing ECF No. 25-4, at 3). She implies that this is enough to impart an understanding of the fact that such an agreement would be on a contingency basis.

As Ms. Cummins points out, *Boyd* and *Butler* are highly instructive here as well. (ECF No. 27, at 20). *Butler* approved the simple statement, "If you choose to be represented by the attorneys above, you will not be required to pay any portion of the attorneys' fees." Notice of Collective Action Lawsuit at 2, *Butler*, 876 F.Supp.2d 560 (No. 65-1, at 3). Similarly, the *Boyd* opinion noted, "Given the potentially complicated nature of contingency arrangements and the fact that counsel are required to address their arrangement before a Plaintiff opts-in, the Court declines to require a discussion of the fee arrangement in the Notice." *Boyd*, 2017 WL 386539 at *5. The proposed language assuring opt-in plaintiffs that they will not be required to pay attorneys' fees directly suffices, and further disclosure of Plaintiff's existing fee arrangement is unnecessary.

## V.   Opt-In Form, Contact Information, Notice Method, and Opt-In Period

Plaintiff has proposed an opt-in form and Defendant has provided a slightly different version.  The differing options provided by Defendant's form do not appear necessary.  If any putative plaintiff wants to join with separate counsel, that counsel will determine the proper form.  Plaintiff's form is sufficient and will be approved, except that the references to "Consultant/Inspector" and word "proper" should be deleted.  In addition, Plaintiff has requested that Ascellon be ordered to produce, within 14 days, a list of names, addresses and email addresses of individuals classified as Surveyors who were not paid overtime premiums for hours worked over forty in one or more workweeks during the relevant time frame.  Plaintiff then plans to send the notice and opt-in form by mail and email with a self-addressed stamped envelope for those sent by mail, and to provide a ninety-day period in which employees can complete, sign, and return their Consents.  (ECF No. 25-1, at 15).  Again, Ascellon has not objected, and itself suggests a ninety-day period for response.  (ECF No. 26-4, at 4).  Accordingly, those aspects of the motion will also be approved.

## VI.  Conclusion

For the foregoing reasons, Plaintiff's motions for notice and collective certification and for equitable tolling of the

prospective claims of this collective are granted.   Plaintiff's proposed collective definition and proposed notice are to be modified as set forth in this opinion.   A separate order will follow.


                                          /s/
                                 _____
                                 DEBORAH K. CHASANOW
                                 United States District Judge